## SUPREME COURT.

BELL V. LITTLE, appellant agt. MARTIN WILLETTS, respondent.

The statutes of 1860 and 1862 do not enable a married woman to acquire title to property by gift from her husband. The statutes of 1848 and 1849 expressly disclaim this mode of creating a sole and separate estate in the wife. And the statutes of 1860 and 1862, do not enlarge the means by which such estate may be created, but declare the qualities of such estate when acquired in accordance with existing laws.

No gift *inter vivos*, confers title, unless the change of possession be positive, and the donor in no position to repossess himself of the subject matter of the gift, or to recall the same.

*Kings General Term, February,* 1869.

*Before* J. F. BARNARD, GILBERT *and* TAPPEN, *Justices.*

APPEAL from a judgment entered upon the report of Wm. P. Buffett, referee.

The action was brought by Bell V. Little against Martin Willetts, under sheriff of Suffolk county, to recover the possession of certain articles levied on by him, under an execution against the property of Robert H. Little, her husband.

The other facts in the case sufficiently appear in the report and opinion.

The referee found as facts:

1. That the plaintiff, Bell V. Little, is, and for more than seventeen years has been the wife of Robert H. Little.

2. That for fifteen years previous to and including the year 1865, her said husband was accustomed to give her each year a holiday gift in money—in some years $500, in other years $300.

3. That excepting portions of this money used in paying for articles purchased for herself, she delivered the same to her husband, with directions that he should invest the same for her and as her agent.

4. That he did invest and re-invest the same, together with the profits thereof, in various gold, petroleum, and oil stocks. He kept in his books an account between him and her of these transactions. Mrs. Little was kept advised of these transactions, made occasional memoranda of some of them, but kept no accurate account of the whole.

5. That in the Spring of 1866, Mrs. Little became the owner of a farm at Huntington, Suffolk county, on which she and her husband and family then went to reside, and where they have since resided.

6. That in 1866, Mrs. Little purchased and placed on the farm, through the agency of her husband, the following articles mentioned in the complaint, viz: the skeleton wagon, the two-seat wagon, the calash-top wagon, the bay horse, the cow, grindstone, and flat boat. Her husband in purchasing these articles professed to act in behalf of his wife, and paid for them out of the funds above mentioned. The calf mentioned in the complaint was raised from the cow mentioned. The hay and stalks mentioned were grown upon the farm.

7. That in 1867, Daniels, Crozier & Coe obtained a judgment in the supreme court, against Robert H. Little, on which an execution was issued; and the defendant, under sheriff of Suffolk county, by virtue thereof, levied on the articles mentioned in the complaint.

8. That the articles were immediately replevied by the plaintiff.

9. That the value of the articles, other than the hay and stalks, is $460, and of the hay and stalks, $40.

And as conclusions of law:

1. That by the common law, Robert H. Little, had no power to confer upon his wife, the plaintiff, a title to his money by a delivery thereof into her possession in the form of a gift, and that she had no legal capacity to acquire a title to such money in that manner.

2. That the statutes of the state have not altered the law in this respect.

The statutes of 1848 and 1849 expressly disclaiming this mode of creating a sole and separate estate in the wife. And the statutes of 1860 and 1862 not enlarging the means by which such estate may be created, but declaring the qualities of such estate when acquired in accordance with existing laws.

3. That the money delivered by Robert H. Little to his wife, the plaintiff, remaining by force of law his property, the proceeds thereof, and the articles purchased therewith, with the calf raised from the cow thus purchased, were all his property; and that the facts raise no equity in behalf of the plaintiff herein which can countervail the claims of an execution creditor of the owner.

4. That the defendant had authority to take those articles, and that he therefore have judgment for the return thereof, or in default of a return, for the sum of $460, with interest from the date of the replevy, to wit: from the 24th of January, 1868.

5. That the plaintiff was the owner of the hay and stalks mentioned in the complaint, and that she have judgment for six cents damages for the taking and detention thereof.

Judgment being entered for the defendant in accordance with the report, the plaintiff appealed to the general term.

HENRY C. PLATT and C. C. EGAN, *for appellant.*

I. No fraud is alleged in the answer, nor was any proven on the trial.

1. The fact of the married relation existing between this plaintiff and Robert H. Little raises no presumption of fraud. Her right to own, hold and dispose of property, separate from her husband, is the same as if she were a *feme sole.* The acts of '48, '49, '60 and '62 were not in-

tended to enable married women to hold property jointly with their husbands, but to take, hold and dispose of property, as if they had no husbands. (*Goelet* agt. *Gori*, 31 *Barb.*, 314.)

2. The creditors of the husband (Daniels, Crozier & Coe) were not *existing* creditors at the time he made these holiday gifts to his wife, nor at the time the plaintiff purchased the articles in suit. Their claims accrued a long time afterwards.

Gifts and voluntary conveyances made by the husband to the wife, without fraudulent intent, at a time when he is indebted to no one, are not to be called in question by his *subsequent creditors.*

3. A subsequent indebtedness cannot be invoked, to make that fraudulent which was honest and free from impeachment at the time. (*Philips* agt. *Wooster*, 36 *N. Y.*, 414; and cases there cited by PARKER, *J.*

4. A husband or other party, who is solvent, may make a voluntary transfer to, or settlement upon his wife or child, and such transfer or settlement is good against all the world, except *existing* creditors. (*Dygert* agt. *Remerschnider*, 32 *N. Y.*, 648).

5. In this state, ever since the case of *Seward* agt. *Jackson*, (8 *Cow.*, 406), the rule established there has been followed in all the courts, that a subsequent creditor must show *actual fraud*, before he could set aside a voluntary settlement. (*Id.*).

6. The fact that the husband acted as her agent in the transaction of her business, raises no presumption of fraud.

Under the existing statutes, a married woman may manage her separate property through the agency of her husband, without subjecting it to the claims of his creditors.

The application of an indefinite portion of the income to the support of the husband, does not impair the title to her property.

No interest in her separate estate is acquired, either by the husband or his creditors, through his voluntary services as her managing agent. (*Buckley* agt. *Wells*, 33 *N. Y.*, 518).

II. No fraud upon these creditors being alleged or proven the gifts of Robert H. Little to his wife were valid, both in law and in equity; and the property levied upon in this action, by the defendant, was and is the property of the plaintiff; and the referee erred in his conclusions of law to the contrary.

1. The gifts were made perfect by delivery and acceptance. The plaintiff had entire control of them; and, with the profits and proceeds arising out of the investment of those gifts, purchased the articles in suit.

2. These gifts were not prejudicial to any rights of Crozier, Daniels & Coe. *They were not then creditors of the husband.* The husband was entirely solvent, for aught that appears in the evidence.

3. The gifts made to her by her husband were reasonable and proper, under the circumstances. They were evidently intended to be perfect conveyances—to vest in the wife a full possession, control and title to the monies given, as a voluntary settlement and separate property. Her separate investment of these funds, and the keeping of her accounts separately, shows this fact. The gifts were followed by an immediate and continued change of possession, and a separate enjoyment of profits and benefits arising therefrom. The agency of her husband was lawful and proper.

4. There was never any attempt of the husband to disturb this separate title, possession and enjoyment, or in any manner to interfere with his wife's exclusive rights thereto. He acted as her agent, when authorized and directed by her so to do.

III. The gifts were valid in law.

1. The rule of the common law, which treats a conveyance from husband to wife as void, is solely a technical re-

sult from the necessity of two parties to a contract, while, at common law, husband and wife are one person. (1 *Blackstone Com., p.* 442.) This, in the language of Justice POTTER (*Dygert* agt. *Remerschnider*), "is the crude, harsh old rule of the common law." The modern advance, both in this country and in England, of a more reasonable, wise and just view of the separate and independent rights existing between husband and wife, both in legislation and in the courts, amounts to a repudiation of that despotic rule, originating in the dark ages, that a wife, neither in her person or estate, had any legal existence. The unseen wisdom, says POTTER, J., of these oracular utterances of black letter common law, I am happy to say, no longer obscures the jurisprudence of this state.

2. Since the acts of '48, '9, '60, '62, husband and wife are two separate and distinct persons, as to holding and acquiring property, real or personal.

3. A wife may make a gift of her separate property to her husband. (*Gage* agt. *Duchy,* 28 *Barb.,* 622 ; *Shirley* agt. *Shirley,* 9 *Paige,* 363).

The same rule would, by analogy, apply to the husband, making gift to the wife. (*See Borst* agt. *Spelman,* 4 *N. Y.,* 284).

These acts are to be liberally construed in favor of married women. (*Power* agt. *Lester,* 17 *How. Pr.,* 413).

4. Under the statutes relating to married women, the common law rule that a wife cannot take by gift from her husband is *abrogated.* (*Rawson* agt. *Penn. R.R. Co.,* 2 *Abb. Pr. R., (N. S.),* 220).

(*General term, first district, February,* 1867. *See decision there given.*)

IV. The gifts were valid in equity.

1. The referee erred in finding as a conclusion of law, "that the facts raise no equity in behalf of the plaintiff therein, which can countervail the claims of an execution

Little agt. Willetts.

creditor, &c." The facts in this case warrant the exercise of the equitable powers of the court.

2. No fraud alleged or shown.

3. Gifts made *years* prior to any claims of creditors on husband.

4. Husband solvent and in good financial standing.

5. The distinction between legal and equitable remedies no longer continues since the Code. The legislature has united law and equity to the fullest extent, and its constitutional power to do so is firmly settled. (21 *How. Pr.*, 296).

6. Since the Code, the question in an action is not whether the plaintiff has a legal right or an equitable right, or the defendant a legal or equitable defense ; but whether according to the whole law of the land, applicable to the case, the plaintiff makes out the right which he seeks to establish, or the defendant shows that the plaintiff ought not to have the relief sought for.—JOHNSON, J., (*Crary* agt. *Goodman,* 16 *N. Y.,* 268).

7. This idea of the union and identity of husband and wife does not prevail in courts of equity. (2 *Story Equity Jurisp.,* § 1, 368, 72, 73, 74, 75).

8. The rights of married women form a favored head of equity jurisdiction; and courts of equity are sedulous to protect them in their dealings concerning property. (2 *Story Eq. Jurisp.,* § 1, 429).

9. The intervention of a trustee is no longer deemed essential to sustain the wife's equitable rights under an agreement or conveyance from a husband to his wife. (2 *Eq. Jurisp.,* § 1, 380 ; *Wallingford* agt. *Allen,* 10 *Peters U. S. C. R.,* 583 ; *Lynch* agt. *Livingston,* 6 *N. Y.* (2 *Seld.*) *R.,* 422).

10. A court of equity also recognizes the relationship of debtor and creditor between husband and wife. The wife may in equity recover her debt out of his estate after his death. (2 *Story Eq. Jurisp.,* § 1, 373 ; *Gardner* agt. *Gard-*

*ner*, 22 *Wend.*, 526 ; *Devin* agt. *Devin*, 17 *How. Pr. R.*, 514).

11. The separate property of a wife, in respect to which a court of equity will regard as a *feme sole*, may also be acquired directly from her husband as a gift, and wholly created after coverture, without any consideration whatever. (*Slanning* agt. *Styles*, 3 *Pierre Wms. R.*, 338 ; *Calmady* agt. *Calmady, same*, 339) ; *Ryder* agt. *Hulse*, 24 *N. Y. R.*, 379).

12. The language of the courts of equity for the last century and over, shows a uniformity of principle as to sustaining rights of married women.

*a.* Lord Chancellor HARDWICKE, in the case of *Lucas* agt. *Lucas*, 1 *Atkins R.*, 271, says; "In this court, gifts between husband and wife have often been supported, though the law does not allow the property to pass."

*b.* Lord Chancellor ELDON, in the case of *Arundel* agt. *Phipps*, 10 *Vesey R.*, 148, says : "It appears to have been asserted that a husband and wife could not, after marriage, contract for a transfer of property from the husband to the wife, or trustees for her. *The doctrine is not so either here or at law.*

*c.* Chancellor KENT, in the case of *Shepard* agt. *Shepard*, 7 *Johns. Ch. R.*, 60, says : "I conclude that the deed from the husband to the wife ought in this case to be aided and enforced by this court." Sustaining a direct conveyance of real estate from husband to wife.

*d.* Judge WAYNE, in the case of *Wallingford* agt. *Allen*, 10 *Peters U. S. C. R.*, 594, says : " Where the husband is in a situation to make a gift of property to the wife, and distinctly separates it from the mass of his property for her use, equity will sustain it, though no trustee has been interposed to hold for the wife's use."

*e.* Vice-Chancellor McCOUN, in the case of *Neufville* agt. *Thomson*, 3 *Edw.. V.-C. R.*, 93, says : "In equity, gifts to the separate use of a married woman, as well those presented by the husband, as those presented by third persons,

with or without the intervention of trustees, expressly named, will be protected in cases where they have been made in good faith, and the rights of creditors are not infringed."

THOS. YOUNG, *for respondent.*

I. The money paid for the articles recovered by the defendant belonged to Robert H. Little the husband of the plaintiff.

The purchase, therefore, was the purchase of the husband, and the property was amenable to an execution against him.

1. At common law a married woman was incapable of taking anything by gift from her husband, except by will. (1 *Black. Comm.*, 442).

2. This incapacity has not been removed. The statutes of 1848 and 1849 only enable her to take by gift, &c., from any person other than her husband. (*Laws* 1848, *chap.* 200, *as amended by Laws* 1849, *chap.* 375).

3. The statutes of 1860 and 1862, do not remove that incapacity, nor was that their object. (*Laws* 1860, *chap.* 90 ; *Laws* 1860, *chap.* 90, *as amended by Laws* 1862, *chap.* 172).

*a.* Their purpose was, simply, to declare the qualities of the estate she then had, or might thereafter acquire, and to enable her to sue, and be sued, in reference to the same. They do not say from whom she may, nor from whom she may not, take. They neither increase nor diminish the number of those, from whom, by the laws of 1848 and 1849, she is enabled to take.

*b.* The language of the acts of 1860 and 1862, does not admit of any such construction as that put upon it, in the case of *Rawson* agt. *The Penn. R. R. Co.*, (2 *Abb. Pr. R.*, *N. S.* 220).

Such general statutes are never understood to overreach

particular prohibitions, founded on special reasons, of policy, or convenience. (*White* agt. *Wager*, 25 *N. Y. R.*, 328).

II. The money was given the plaintiff by her husband before the passage of the act of 1862, whatever, therefore, may be the general effect of that law, as it is not retrospective, it does not affect that gift.

III. Robert H. Lit le had no capacity to *acquire* title by gift from his wife. (*White* agt. *Wager*, 25 *N.Y. R.*, 328); so also, he had no power to *confer* title upon her by gift. There is no language in the married woman's acts, and nothing in their apparent intention, which looks to the removal of any disabilities under which the husband labored.

IV. For the reasons stated in the last three points, the plaintiff can *claim* only an equitable title to the money with which the said articles were purchased, or to the articles purchased therewith.

V. This is not a proper case for the equitable interference of the court in the plaintiff's behalf.

1. There is nothing in the nature of the action, nor are there any allegations in the pleadings, or facts, in the case, which call for such interference.

2. The money with which the articles in question were purchased came from the husband, and was handed back to him. He used it as his own, speculating with it on his own judgment, and receiving no compensation for his services. These facts are badges of fraud. (*Buckley* agt. *Wells*, 33 *N. Y. R.*, 518, 520).

It is evident from the whole testimony that the plaintiff, at the time. did not consider this money as her separate property; she kept no connected account of it, and seldom any written account. She had no regular settlements with her husband. It seems to have been an arrangement instituted and carried on by the husband only, and for some other purpose than that of bestowing, in good faith, a gift upon his wife. It is just to infer that he obtained credit upon the faith of this money. And under all

the circumstances of the case, the equity of his creditors, "Daniels, Crozier & Coe," though their debt matured after these pretended gifts; is plainly superior to that of his wife. *Sherman* agt. *Elder*, 1*Hilt.*, 476).

VI. The equities of this case have been fully considered by the referee, before whom, on the trial, all the facts and circumstances appeared more fully than they can in the printed case, and he finds, as a. conclusion of law, that the facts raise no equity in behalf of the plaintiff which can countervail the claims of an execution creditor of the owner."

1. This conclusion of law is sustained by the findings of fact.

But if not, the findings of fact necessary to sustain it will be presumed, as upon the evidence such findings would not be disturbed as unwarranted. (*Grant* agt. *Morse*, 22 *N. Y. R.*, 323; *Smith* agt. *Coe*, 29 *N. Y. R.*, 666, 670; *Brainard* agt. *Duning*, 30 *N. Y. R.*, 211; *Sinclair* agt. *Talmadge*, 35 *Barb.*, 603; *Union Bank* agt. *Mott*, 39 *Barb.*, 180, 184; *Richardson* agt. *Dugan*, 8 *Bosw.*, 207).

2. This conclusion seems somewhat like a finding of fact. If it be regarded as such, then it should not be interfered with; it is not clearly against the weight of evidence. (*Watson* agt. *Campbell*, 28 *Barb.*, 221; *Thompson* agt. *Wood*, 1 *Hilt.*, 93).

VII. Judgment should be affirmed with costs.

*By the court*, TAPPEN, J. The plaintiff is a married woman, and for a period of fifteen years, previous to, and including the year 1865, her husband had given her holiday gifts of money, amounting in the aggregate to about $15,000. These monies she instructed him, to use as her agent; he did. so use and invest them in various stock transactions, and kept a separate account thereof.

On a judgment against the husband, the defendant under sheriff made a levy upon a wagon, and other personal prop-

erty in June, 1867. This personal property was upon a farm of the plaintiffs' on which the plaintiff and her husband resided. The plaintiff brought this action of replevin, and claims that the property was purchased by her husband as her agent, with monies acquired as above stated, or with the increase or profits of such monies ; that such property was in her possession and use upon the farm, and that her husband was solvent at the time of the purchase of the property. The defense is principally based upon the legal proposition that the wife could acquire no property by gitt from her husband, and the referee before whom the case was tried, so found, and reported in favor of defendant. I do not, however, upon the facts of the case, assume that there was any gift—that is, a gift of any property of which the wife retained possession or control, or which was placed in such condition as to render it capable of being distinguished from other property of the donor.

I am not prepared to hold that a gift like the one in question, confers any title upon the wife, or would confer any title upon any other person as donee against third parties.

A different conclusion might be reached if it were a return of the wife's money to her, or if she retained some control of the property which is the subject of the gift, or if it were property capable of being distinguished, but to hold that a wife may immediately return to her husband, money that he had given her, with instructions to use it as her agent, and that she may maintain title to personal property upon the allegation that it was purchased by her husband as her agent with the proceeds or profits of those gifts is to leave the entire business community without suitable protection.

It does not appear but that in this case, the " agent " the husband, has all that his wife has entrusted to him, and can fully account to her therefor.

In respect to the separate account kept between them, the only account produced upon the trial, was one made by the husband's book-keeper, and commencing in June, 1865

The wife was a witness upon the trial and the husband was not called.

I have not thought it necessary to consider whether the creditor upon whose judgment and execution the levy was made, was a prior or subsequent creditor; nor does the question of the right of the wife in equity to have an account from the husband, need to be considered here—if her husband were simply her debtor, then his gifts did not constitute a separate estate, in the sense which is necessary to enable her to maintain this action. The appellant cites, *Dygert* agt. *Remerschnider*, (32 *N. Y.*, 548) in which the right of the wife was upheld, but in that case the wife had paid full value to the husband's creditors. The appellant also cites *Wallingford* agt. *Allen*, (10 *Peters U. S. S. C. R.*, 594), in which Judge WAYNE, says : " Where the husband is in a situation to make a gift of property to the wife, and *distinctly separates* it from the *mass* of his property for her use, equity will sustain it, &c." I hold the latter feature to be wanting in this case.

No gift *inter vivos* is sustained as conferring title unless the change of possession be positive, and the donor in no position to re-possess himself of the subject matter of the gift, or to recall the same. The legislation in this state referred to upon the argument, does not enlarge the plaintiff's rights or remedy.

The statutes of 1848, '9, enable a married woman to take by gift, &c., from any person other than her husband, and the subsequent acts of 1860, '62, declare the nature or qualities of the estate which married women may acquire, and enable them to sue, &c., and these acts do not in terms or by implication designate the husband as a person from whom the wife might take, &c.

Judgment should be affirmed with costs.